IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MOTEN PAYNE, Special administrator )
for the Estate of Clifton Brown, )
 )
        Plaintiff, )
 )
  v. ) Case No. 06-3010-JWL
 )
ROGER WERHOLTZ, individually, )
DAVID McKUNE, individually, and )
HEALTH COST SOLUTIONS, INC., )
d/b/a CORRECT CARE SOLUTIONS, INC., )
 )
        Defendants. )
 )
 )

## MEMORANDUM AND ORDER

In this action, plaintiff, as administrator of the Estate of Clifton Brown, brings claims under 42 U.S.C. § 1983 and the Kansas wrongful death statute, Kan. Stat. Ann. § 60-1901 *et seq.*, relating to Mr. Brown's death while an inmate at Lansing Correctional Facility (LCF). Defendant Roger Werholtz, Secretary of the Kansas Department of Corrections (KDOC), and David McKune, LCF's warden (collectively, "the State defendants"), have been sued in their individual capacities. Defendant Correct Care Solutions (CCS) provided medical services at LCF pursuant to a contract with the State of Kansas.

This matter comes before the Court on a variety of motions by the parties. For the reasons set forth below, the Court rules as follows:

Plaintiff's Motion to Admit Averments (Doc. # 185) is **denied.**

Plaintiff's Motion to Strike [CCS's] Answer to Plaintiff's Third and Fourth Amended Complaints (Doc. # 198) is **denied as moot**.

Plaintiff's Motion for Partial Summary Judgment [against CCS] (Doc. # 188) is **denied.**

Plaintiff's Motion to File Supplemental Information (Doc. # 200) is **granted**.

Defendants' Motion for Summary Judgment [by State defendants] (Doc. # 174) is **granted**.

Motion for Summary Judgment [by CCS] (Doc. # 189) is **granted.**

Defendant's Motion for Ruling [by CCS] (Doc. # 206) is **denied as moot**.

Defendants' Joint Motion for a Status Conference (Doc. # 210) is **denied as moot**.

### I.     Facts

On January 12, 2004, Clifton Brown died while incarcerated at LCF, a facility operated by KDOC. Defendant Roger Werholtz was Secretary of KDOC at that time, and David McKune acted as LCF's warden. Defendant CCS provided all medical care to inmates at LCF pursuant to a contract with KDOC.

While incarcerated at LCF, Mr. Brown regularly received dialysis for his damaged kidneys. In the early morning of January 12, 2004, Mr. Brown experienced pain and requested medical attention. A CCS nurse visited plaintiff at his cell, determined that his vital signs were acceptable, and decided that Mr. Brown could undergo his scheduled dialysis later that morning. Subsequently, on his way to dialysis,

Mr. Brown experienced more difficulties and required wheelchair assistance. Mr. Brown then experienced distress and stopped breathing. The CCS nurses administered CPR and summoned EMS. When EMS personnel arrived, they took over Mr. Brown's treatment and used a defibrillator on Mr. Brown, to no avail. At the hospital, Mr. Brown was declared dead as a result of cardiac arrest.

Plaintiff, Mr. Brown's stepfather and administrator of his estate, along with Mr. Brown's mother and daughters, brought this action under 42 U.S.C. § 1983, alleging deliberate indifference to Mr. Brown's serious medical needs in violation of the Eighth Amendment, and under the Kansas wrongful death statute, Kan. Stat. Ann. § 60-1901 *et seq.* By Memorandum and Order dated January 8, 2007 (Doc. # 73), the Court dismissed all claims against the State defendants in their official capacities on Eleventh Amendment grounds, and dismissed any Section 1983 claims to the extent brought by anyone other than the representative of Mr. Brown's estate.

## II.     Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to

resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon his or her pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 910th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R.

Civ. P. 1).

### III.   Plaintiff's Motions

Plaintiff has moved to have the allegations in his third amended complaint deemed admitted by CCS, based on CCS's failure to file an answer to that pleading. Relying on such admissions, plaintiff has also filed a motion for partial summary judgment, on the issue of liability, against CCS. Finally, plaintiff has filed a motion to strike CCS's eventual answer to plaintiff's third and fourth amended complaints. The Court denies all three motions.

The following procedural history is relevant to these motions. On May 25, 2007, after obtaining leave of Court, plaintiff filed his third amended complaint, which substituted the proper name for defendant CCS. At the pretrial conference on July 9, 2007, the Court granted defendants an extension until July 17, 2007, to file answers to the third amended complaint. On July 10, 2007, plaintiff moved for leave to file a fourth amended complaint, which would substitute the present plaintiff, Moten Payne, as the proper administrator of Mr. Brown's estate. At a continuation of the pretrial conference on July 19, 2007, the Court granted the motion to amend, and the fourth amended complaint was filed on that day. On July 27, 2007, the pretrial order was issued by the Court. On July 30, 2007, plaintiff filed his motion to deem admitted the averments contained in the third amended complaint. On July 31, 2007, plaintiff filed his motion for summary judgment against CCS.

5

CCS did not bother to respond to those two motions (although the State defendants filed a response to the first motion). Instead, on August 8, 2007, CCS filed an answer to the third and fourth amended complaints. On August 18, 2007, plaintiff moved to strike that answer as untimely.

By their filings, the parties have demonstrated that they do not understand the full effect of the pretrial order. The pretrial order supersedes all other pleadings, and it governs the parties' claims and defenses thereafter. *See Youren v. Tintic School Dist.*, 343 F.3d 1296, 1304 (10th Cir. 2003). CCS's denials and defenses are set forth in the pretrial order, making any further answer unnecessary (and ineffectual). Any objection to the assertion of defenses by CCS had to be raised before entry of the pretrial order. Accordingly, plaintiff's motion to have the allegations of the third amended complaint deemed admitted by CCS is denied.[1]

Plaintiff's motion for summary judgment was based on his allegations having been admitted by CCS. Because those allegations are not deemed admitted, the Court denies plaintiff's motion for summary judgment as well.

Finally, for the reasons already stated, CCS's answer to the third and fourth amended complaints has no effect, as it succeeded the issuance of the pretrial order. To the extent that CCS wished to add any defenses, it was required to seek an amendment

---

[1] Moreover, by the time plaintiff filed this motion, he had already filed his fourth amended complaint, which superseded the allegations contained in the third amended complaint.

6

of the pretrial order. Therefore, plaintiff's motion to strike that answer is denied as moot.

### IV.   **Defendants' Motions for Summary Judgment**

A.   Constitutional Claims under Section 1983

Plaintiff has brought claims against the State defendants under 42 U.S.C. § 1983, alleging that they violated the Eighth Amendment by their deliberate indifference to Mr. Brown's serious medical needs.[2]  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Plaintiff only seeks damages resulting from Mr. Brown's death on January 12, 2004. *See* Pretrial Order ¶ 10. The State defendants now move for summary judgment on these claims.[3]

---

[2] Although it was not clear from plaintiff's complaints, it appears from the pretrial order that plaintiff's Section 1983 claims, comprising plaintiff's Counts I, II, and III, are not now asserted against CCS. Where the elements of those counts are set out in the pretrial order, CCS is mentioned only in Count II with respect to the State defendants' failure to supervise CCS (as plaintiff has consistently titled that count). Even if plaintiff had attempted to assert a constitutional claim against CCS, however, summary judgment would be appropriate on such a claim in light of plaintiff's failure to present sufficient evidence of CCS's deliberate indifference or causation, as discussed below. In addition, corporate defendants such as CCS cannot be held vicariously liable under Section 1983 for the acts of their employees. *See Baker v. Simmons*, 65 Fed. App'x 231, 234 (10th Cir. May 6, 2003) (citing *DeVargas v. Mason & Hangar-Silas Mason Co.*, 844 F.2d 714, 722 (10th Cir. 1988)). Plaintiff has not sued any individual employees of CCS.

[3] In their reply brief, the State defendants moved to strike various exhibits offered by plaintiff in opposition to summary judgment, on the ground that they were not supported by affidavit or deposition testimony as required under Fed. R. Civ. P. 56(c) and D. Kan. Rule 56.1(d). Plaintiff then filed a motion to supplement its opposition with
(continued...)

Plaintiff does not provide any evidence that the State defendants had any personal involvement with Mr. Brown's medical care on the day of his death.  Rather, plaintiff argues that the State defendants were deliberately indifferent in their failure properly to supervise and train prison staff and CCS.[4]  Plaintiff's allegations and evidence in support of his claims against the State Defendants may be summarized as follows.

Secretary Werholtz chose to contract with CCS to provide the medical care at LCF.  Warden McKune's duties included responsibility for the health of the inmates.  The State defendants had received reports setting forth various issues with the medical care provided by CCS, including the need for additional training in emergency care.  Mr. McKune issued a general order about the placement of defibrillators in the facility, thereby recognizing a risk of an inmate's suffering cardiac arrest.  Dialysis patients are

---

[3](...continued)
additional evidence in an attempt to provide the necessary foundation for those exhibits. That motion is granted as unopposed. Nevertheless, some of plaintiff's exhibits are still not supported by the necessary affidavit or deposition testimony. In particular, the Court notes that plaintiff's counsel's own affidavits, in which he states that particular exhibits were received from defendants in discovery, does not provide the necessary foundation. Accordingly, the Court strikes Exhibits 4, 5, 6, 9, 10, 11, and 22.  The Court notes, however, that consideration of these exhibits would not alter any other ruling by the Court.

[4]In his complaints, plaintiff also attempted to name various John Does (correctional officers at LCF) and Jane Does (CCS staff members) as defendants. Although the pretrial order retained those designations in the case caption, no additional individual defendants are named therein. Because no such individual defendants have been properly served with process and added to the suit, any claims against Doe defendants are dismissed pursuant to Fed. R. Civ. P. 4(m).  *See Scott v. Hern*, 216 F.3d 897, 911-12 (10th Cir. 2000).

especially at risk of cardiac arrest. Another inmate had filed an official grievance that included medical care issues. That inmate has now stated in an affidavit his belief that defibrillators at LCF were not properly maintained.[5]

With respect to Mr. Brown specifically, the State defendants had notice through records that he was an inmate with special medical needs. Mr. Brown was permitted to purchase a large number of aspirin tablets at the LCF commissary, although aspirin is not appropriate for dialysis patients. He was prescribed a medication called Disalcid, although that medication may be harmful to dialysis patients. One of the nurses treating Mr. Brown on the morning of January 12, 2004, had not been trained to operate the defibrillator. Plaintiff's expert, Dr. Evans, has opined that CCS breached the standard of care in failing adequately to dialyze Mr. Brown over the course of his treatment at LCF.[6] Another physician, Dr. Wirkkula, submitted an affidavit stating that the standard of care was breached when personnel did not administer CPR immediately when Mr.

---

[5]Plaintiff argues that a witness interview has revealed that post orders at LCF were not updated and did not address emergency medical situations, but he has provided no evidence to support that allegation. Plaintiff also alleges, without supporting evidence, that a particular guard, Officer Ahmad, was responsible for identifying emergency situations but was not properly trained to do so. In the pretrial order, plaintiff's Count III is based solely on the State defendants' failure to supervise Officer Ahmad. Plaintiff has not provided any evidence that Officer Ahmad had anything to do with Mr. Brown's care or death on January 12, 2004, and he concedes in his opposition brief that Officer Ahmad was not responsible for a constitutional violation. Accordingly, summary judgment is appropriate on Count III for this alternative reason.

[6]In his report, Dr. Evans also opined that CCS breached the standard of care with respect to their use of CPR and emergency procedures on January 12, but in his deposition, he disclaimed any opinions not within his specialty of nephrology.

9

Brown stopped breathing (instead transporting him to the medical facility first) and when the nurses did not use a defibrillator before EMS personnel arrived.

As noted above, plaintiff has not presently any evidence that the State defendants personally participated in Mr. Brown's medical care, or that they were aware of Mr. Brown's medical difficulties in the early hours of January 12, 2004. Plaintiff must meet the following standard to establish liability for an Eighth Amendment violation under Section 1983 of supervisory officials such as the State defendants:

> Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference, rather than mere negligence. To be guilty of "deliberate indifference", the defendant must know he is creating a substantial risk of bodily harm. To establish a supervisor's liability under § 1983 [the plaintiff] must show that an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.

*Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997) (citations omitted). With respect to allegations of a failure to train, "[a] supervisor . . . may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). Moreover a supervisor cannot be liable under Section 1983 without an underlying constitutional violation. *See Dry v. United States*, 235 F.3d 1249, 1259 (10th Cir. 2000); *Martinez v. Mafchir*, 35 F.3d 1486, 1491 (10th Cir. 1994). Finally, the plaintiff must establish the requisite causation with respect to his injuries to impose Section 1983 liability. *See Scott*, 216 F.3d at 911.

10

The Court concludes that summary judgment is appropriate in favor of the State defendants on plaintiff's Section 1983 claims on three separate bases.[7] First, plaintiff has not provided evidence that Mr. Werholtz or Mr. McKune was deliberately indifferent to Mr. Brown's medical needs. These defendants did not personally participate in Mr. Brown's medical care, nor did they direct or control that care other than in contracting with CCS and overseeing its personnel only in the most general sense. Plaintiff has not provided any evidence that the State defendants completely abdicated their responsibilities regarding the inmates' medical care to the extent that future misconduct was almost inevitable. Plaintiff attempts to show that CCS's medical care was substandard generally, but he has utterly failed to show that such care was so deficient, particularly with respect to Mr. Brown, that CCS should no longer have held that contract. To the contrary, the fact that the State defendants sought reports about any health care issues and staffing suggests that they did *not* ignore their oversight responsibility. *Cf. Green*, 108 F.3d at 1302 (deliberate indifference found where warden had actual knowledge of plaintiff's injuries and lack of treatment at the time they occurred).

Second, plaintiff has not established any link between the alleged deliberate indifference of the State defendants and an underlying Eighth Amendment violation by

---

[7]The State defendants assert that they are entitled to qualified immunity. Because there is no dispute that this law under the Eighth Amendment is clearly established, the immunity analysis is no different than the Court's analysis of the merits of the claims.

someone under their supervision. Plaintiff has not provided any evidence of deliberate indifference to Mr. Brown's medical needs by any particular member of the prison staff. Nor has plaintiff provided evidence of deliberate indifference by an employee of CCS. The facts are undisputed that CCS personnel did attempt to treat Mr. Brown on January 12, 2004, did contact EMS, and did undertake emergency life-saving procedures. Plaintiff has provided evidence that CCS breached the standard of care in their treatment of Mr. Brown that morning and with respect to his dialysis while incarcerated at LCF. Plaintiff consistently asserts only that CCS was negligent, however, and plaintiff has failed to provide evidence that CCS's conduct went beyond mere negligence or medical malpractice, as required for a constitutional violation. *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (negligence or medical malpractice insufficient); *Franklin v. Kansas Dept. of Corrections*, 160 Fed. App'x 730, 735 (10th Cir. Dec. 23, 2005) (difference of opinion regarding treatment does not constitute deliberate indifference) (citing *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999)).

Third, even if the State defendants and CCS are assumed to have been deliberately indifferent to Mr. Brown's medical needs, plaintiff has failed to establish the requisite causation to establish the State defendants' liability under Section 1983. Although Dr. Evans opined that CCS breached the standard of care in dialyzing Mr. Brown, he testified that he could not state that CCS's failure in that regard would have

12

made a difference or prevented Mr. Brown's death on January 12, 2004.[8]  Similarly, although Dr. Wirkkula provided an affidavit stating that personnel at the prison breached the standard of care in apparently delaying the use of emergency procedures, that affidavit contained no opinion that the proper use of those procedures would have saved Mr. Brown and that the breach therefore caused Mr. Brown's damages.  Plaintiff's constitutional claim cannot rest on mere speculation that Mr. Brown would have survived with better treatment.  In the absence of the necessary evidence of causation, plaintiff cannot recover for any deliberate indifference by the State defendants.  *See, e.g., Beers v. Ballard*, 2007 WL 2827704, at *2-3 (10th Cir. Oct. 1, 2007) (unpub. op.) (citing lack of evidence that untimely response precluded life-saving treatment; no experts testified about effects of delay in treatment, and the court declined to speculate whether plaintiff "would have fared better with prompter treatment"); *Kikumura*, 461 F.3d at 1292 ("When the prisoner's Eighth Amendment claim is premised on an alleged delay

---

[8]After the close of discovery and the parties' submission of summary judgment motions, Dr. Evans executed an affidavit in which he stated that Mr. Brown's treatment did not meet the standard of care with respect to his dialysis and the apparent lack of treatment directly from a physician. Dr. Evans further stated, in conclusory fashion, that, as a result of such failures, Mr. Brown "incurred pain and suffering that was easily preventable." The Court concludes that this new opinion by Dr. Evans, first disclosed in opposition to summary judgment, does not provide the necessary causation for plaintiff's claims. As noted above, plaintiff seeks damages only relating to Mr. Brown's death. Dr. Evans's deposition testimony, in which he conceded that he could not state whether Mr. Brown would have survived with better care, cannot be contradicted by a subsequent affidavit in order to create an issue of fact. *See Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2003) (sham affidavit in conflict with deposition testimony may be disregarded).

13

in medical care, the prisoner must show that the delay resulted in substantial harm.").

For these reasons, the State defendants are entitled to summary judgment on plaintiff's claims under Section 1983.

### B. Wrongful Death Claims

Plaintiff has brought wrongful death claims against the State defendants, alleging that they breached their duty to provide adequate medical care to Mr. Brown. Plaintiff has also brought wrongful death claims against CCS, alleging that CCS was negligent in its treatment of Mr. Brown and in supervising and controlling its employees.

The Court concludes that defendants are entitled to summary judgment on all of plaintiff's state-law claims, on the basis that plaintiff has failed to provide evidence of the requisite causation. Under Kansas law, expert medical testimony is generally required to establish causation in medical negligence cases. *See Bacon v. Mercy Hosp. of Fort Scott*, 243 Kan. 303, 307, 756 P.2d 416, 420 (1988). As noted above, plaintiff's experts have failed to provide the necessary evidence of causation. Accordingly, summary judgment is appropriate.

In addition, plaintiff has effectively abandoned his wrongful death claims in the pretrial order. Under Kansas law, such claims are brought by the decedent's heirs at law. *See* Kan. Stat. Ann. § 60-1902. Plaintiff Moten Payne, who is administrator of Mr. Brown's estate, was Mr. Brown's stepfather. In the complaints that preceded the pretrial order, the plaintiffs included Mr. Brown's daughters and his mother as the daughters' next friend. In the pretrial order, however, Mr. Payne is named as the only plaintiff in

14

the caption, "plaintiff" is used in the singular throughout, and no mention is made of any other plaintiffs, including Mr. Brown's heirs. Thus, because the pretrial order now controls the litigation, the only plaintiff is Mr. Payne, who may not bring wrongful death claims under Kansas law.[9]

Accordingly, the Court grants summary judgment on plaintiff's state-law claims in favor of all defendants.[10]

### V.   Defendants' Joint Motion for Status Conference

In light of this order, which disposes of all claims in the case, defendants' joint motion for a status conference is denied as moot.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's Motion to Admit Averments (Doc. # 185) is **denied.**

IT IS FURTHER ORDERED THAT plaintiff's Motion to Strike (Doc. # 198) is **denied as moot**.

IT IS FURTHER ORDERED THAT plaintiff's Motion for Partial Summary

---

[9]It does not appear that Mr. Payne, as administrator of Mr. Brown's estate, has attempted to bring a survival action to recover for pain and suffering experienced by Mr. Brown prior to death. As noted above, the allegations in the pretrial order relate exclusively to the events of January 12, 2004, and plaintiff only seeks damages resulting from Mr. Brown's death. To the extent that plaintiff has attempted to bring any such survival claims under Kansas law, the Court would decline to exercise supplemental jurisdiction over such claims, in light of the dismissal of plaintiff's federal claims.

[10]CCS's motion for a ruling on its summary judgment motion—a type of motion strongly discouraged by the Court—is denied as moot.

Judgment (Doc. # 188) is **denied.**

IT IS FURTHER ORDERED THAT plaintiff's Motion to File Supplemental Information (Doc. # 200) is **granted**.

IT IS FURTHER ORDERED THAT the Motion for Summary Judgment by defendants Werholtz and McKune (Doc. # 174) is **granted**.

IT IS FURTHER ORDERED THAT defendant CCS's Motion for Summary Judgment (Doc. # 189) is **granted.**

IT IS FURTHER ORDERED THAT defendant CCS's Motion for Ruling (Doc. # 206) is **denied as moot**.

IT IS FURTHER ORDERED THAT defendants' Joint Motion for a Status Conference (Doc. # 210) is **denied as moot**.

IT IS SO ORDERED.

Dated this 5th day of November, 2007, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge